IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

DOUGLAS C. NELSON and
RENAE E. NELSON,
        Plaintiffs,                                Civil No. 03-656-HA

     v.                                          OPINION AND ORDER

R-B RUBBER PRODUCTS, INC., an Oregon
corporation, DASH MULTI-CORPORATION,
a Missouri corporation, MARVIN S. WOOL, an
individual, GREGORY DIVIS, an individual, and
DAVIS WRIGHT TREMAINE, a Washington
limited liability partnership,
        Defendants.

---

Steven C. Burke
4248 Galewood
Lake Oswego, Oregon 97035
    Attorney for Plaintiff

Daniel H. Skerritt
Frank J. Weiss
Steven D. Olson
Tonkin Torp
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, Oregon 97204
    Attorneys for Defendants.

HAGGERTY, Chief Judge:

Husband and wife plaintiffs filed this case in May 2003, alleging violations of O.R.S. 60.551, *et seq.* (referred herein as the Oregon Dissenters' Rights statute) and breach of fiduciary duty. In July 2003, defendants filed a Motion to Dismiss, which was denied. Defendants and plaintiffs now both seek summary judgment. Oral argument on the parties' motions was heard on May 27, 2005. For the following reasons, plaintiffs' Motion for Partial Summary Judgment (Doc. # 59) is denied, and defendants' Motion for Summary Judgment (Doc. # 52) is granted.

## FACTUAL BACKGROUND

Plaintiffs are husband and wife who are prior shareholders of defendant R-B Rubber Products, Inc. (R-B). Douglas Nelson is a former officer and director of R-B. Plaintiffs seek a judicial appraisal of their previously owned shares of R-B stock pursuant to a merger from which they attempted to dissent. They also assert that R-B committed multiple breaches of fiduciary duties, and seek an accounting as a remedy for these breaches.

In 1999 co-defendant Dash Multi-Corporation (Dash) purchased approximately seventy percent of R-B's stock. In August 2002, R-B announced plans to merge with Dash. These plans allowed minority shareholders such as plaintiffs to assert dissenters' rights opposing the merger in accordance with Oregon statutory law. Pursuant to these merger plans, R-B sent all shareholders a Notice regarding the proposed merger between it and "R-B Acquisition Corporation," a wholly owned subsidiary of Dash, and announced a shareholder meeting for January 8, 2003. This Notice was sent in November 2002.

When these plans were announced, plaintiffs jointly owned 78,652 shares of R-B common stock. Renae Nelson individually owned 1,740 shares.

On December 26, 2002, plaintiffs sent R-B Rubber a notice of intent to dissent to the proposed merger via certified mail. Plaintiffs asserted their belief that they were not receiving fair value for their shares and declared that they wished to assert dissenters' rights. This was received by R-B on January 2, 2003. On January 3, 2003, plaintiffs voted by proxy to dissent, but failed to comply with the statutory requirements for dissenting. The shareholder meeting was held on January 8, 2003, and the merger was approved when Dash voted for it as majority shareholder. The merger went into effect on January 10, 2003.

On January 13, 2003, R-B issued a notice that advised all properly dissenting shareholders to deposit their shares with R-B's counsel at his office. On January 15, 2003, R-B sent instructions to shareholders (including plaintiffs' broker, the holder of plaintiffs' stock certificates) addressing the release of all non-dissenting shares and certificates of R-B Rubber at a price of $2.80 per share. Plaintiffs' broker proceeded to sell plaintiffs' shares in this buy-out, having received no contrary instructions from plaintiffs.

## QUESTIONS PRESENTED

Plaintiffs assert two claims against defendants. Plaintiffs argue that they are entitled to (1) a judicial appraisal of their holdings under the Oregon Dissenters' Right Statute and (2) a judicial accounting as a remedy for R-B's breaches of fiduciary duty. Specifically, plaintiffs' Motion for Partial Summary Judgment seeks a Declaration that they perfected their dissenters' rights (thus entitling them to a judicial appraisal) and also seeks a determination as a matter of law that R-B committed multiple breaches of fiduciary duties owed to plaintiffs (and that the appropriate remedy for such breaches is to provide plaintiffs with the fair market value of their

previously owned shares). Plaintiffs assert that the fair market value of their shares would amount to an additional $2,833,310.00 plus prejudgment interest from January 13, 2003.

Defendants seek summary judgment on grounds that plaintiffs are not entitled to assert dissenters' rights and cannot sustain claims for breach of fiduciary duty against any of the defendants. Defendants contend that plaintiffs failed to comply with statutory requirements for dissenting shareholders, and lack actionable breach claims as a matter of law.

## **STANDARDS FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; 2) all inferences to be drawn from the underlying facts must be

viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

The issue of material fact required by Rule 56 to entitle a party to proceed to trial need not be resolved conclusively in favor of the party asserting its existence; all that is required is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Id*.

At this stage of the litigation, the judge does not weigh conflicting evidence or make credibility determinations. These determinations are the province of the fact finder at trial. *Id., see also Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996) (on a motion for summary judgment, the court is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial).

## ANALYSIS

### 1. DISSENTERS' RIGHTS

Dissenters' rights in Oregon are governed by Oregon Revised Statutes 60.551 - 60.594. A shareholder's right to assert dissenters' rights is provided at ORS 60.557, which distinguishes between the rights enjoyed by "record shareholders," defined in relevant part as "the person in whose name shares are registered in the records of a corporation," O.R.S. 60.551(6), and the rights enjoyed by "beneficial shareholders," who are defined as "the person who is a beneficial

owner of shares held in a voting trust or by a nominee as the record shareholder." O.R.S. 60.551(1).

It is undisputed that plaintiffs were beneficial shareholders because they transferred record ownership of their R-B stock to Mutual Securities, their broker. By definition above, Mutual Securities was the record shareholder of plaintiffs' R-B stock.

Oregon's laws regarding beneficial shareholder dissenters' rights are clear:

> b. A beneficial shareholder [such as plaintiffs] may assert dissenters' rights as to shares held on the beneficial shareholder's behalf **only if**:
>
>> i. The beneficial shareholder submits to the corporation the record shareholder's [here, Mutual Securities] written consent to the dissent not later than the time the beneficial shareholder asserts dissenters' rights; and
>>
>> ii. The beneficial shareholder does so with respect to all shares of which such shareholder is the beneficial shareholder or over which such shareholder has power to direct the vote.

O.R.S. 60.557(2) (emphasis provided).

There are other statutory requirements relevant to this litigation. When a corporation takes action that creates dissenters' rights under O.R.S. 60.554 and the action will be submitted to a vote at a shareholders' meeting (such as how the proposed R-B merger was presented), "the meeting notice must state that shareholders are or may be entitled to assert dissenters' rights under ORS 60.551 to 60.594 and be accompanied by a copy of ORS 60.551 to 60.594." O.R.S. 60.561(1).

A shareholder who is properly asserting dissenters' rights is also required to "deliver to the corporation before the vote is taken written notice of the shareholder's intent to demand payment for the shareholder's shares if the proposed action is effectuated and shall not vote such shares in favor of the proposed action." O.R.S. 60.564(1). "A shareholder who does not satisfy

the requirements of subsection (1) of this section is not entitled to payment for the shareholder's shares under this chapter." O.R.S. 60.564(2). Similarly, a shareholder complying with other requirements provided in the written dissenters notice must also "demand payment or deposit the shareholder's share certificates where required, each by the date set in the dissenters' notice," or the shareholder will not be entitled to payment for the shareholder's shares. O.R.S. 60.571(3).

The undisputed facts establish that plaintiffs failed to comply with two of these statutory requirements. Specifically, these failures are:

- As beneficial shareholders, plaintiffs could assert dissenters' rights as to shares held on their behalf *only if* they obtained and submitted to R-B the written consent of Mutual Securities, their broker (and the record shareholder) not later than the time the beneficial shareholder asserts dissenters' rights (O.R.S. 60.557(a));

and

- Even if plaintiffs are construed to have complied with O.R.S. 60.564 (requiring plaintiffs to have delivered written notice to R-B of plaintiffs' intent to demand payment for their shares if the merger were effectuated), plaintiffs failed to demand payment or deposit their share certificates where required in R-B's dissenters' notice (O.R.S. § 60.571(3)).

R-B complied with the statutory notice requirements by including in the proxy materials it provided to shareholders a three-page summary of dissenters' rights under O.R.S. 60.551 to 60.594, including copies of O.R.S. 60.551 to 60.594, and urging that these statutes be read by their shareholders. *See* O.R.S. 60.561(1) (setting forth requirements of proxy statement regarding dissenters).

R-B's proxy materials are attached as Exhibit 1 to the Declaration of Frank J. Weiss in Support of Motion for Summary Judgment (Weiss Decl.). On page two of the "Notice of Special Meeting" (Ex. 1, p.4), shareholders were advised of their right to dissent and were directed to a passage addressing dissenters' rights in the attached proxy statement, and to the statutes

Page 7    Opinion and Order

themselves, which were attached as well.  A heading for "Dissenters' Rights" was listed under the Table of Contents to the proxy statement, and this passage is found at pages eight through ten of Exhibit 1.  This summary of the related statutes (which were provided as Annex C to the proxy statement) refers specifically to the dissenting shareholders' responsibility to (1) timely deposit their certificates in accordance with the terms of the dissenters' notice (Ex. 1, p.8) and (2) obtain and submit the record shareholders' written consent if the shareholders are beneficial shareholders.  The summary also includes instructions that read, **"Shareholders should read the complete text of Sections 60.551 to 60.594 of the Oregon Revised Statutes which is attached as Annex C,"** and advises that "Shareholders who are interested in perfecting dissenters' rights in connection with the merger should consult with their counsel for advice as to the procedures required to be followed."  Ex. 1, p.10.

      Plaintiffs argue that dissenters' rights statutes are "generally construed liberally in favor of dissenting stockholders" and "are entitled to reasonable construction, rather than a rigid and technical construction."  Pls.' Reply Br., p.6.  While conceding that proxy statements should not have to contain every piece of information potentially relevant to a proposed merger, plaintiffs assert that the passages regarding dissenters' rights in R-B's proxy materials were misleading.  *Id*., p.8.  Plaintiffs complain that the summary in the proxy statement was misleading because it failed to distinguish between record shareholders and beneficial shareholders, and failed to define what the terms "holders" mean.  Plaintiffs contend that this rendered the summary misleading regarding the explanation of dissenters' rights, and that the Notice was also illegal because it failed to disclose the self-dealing between Dash and R-B.

There is no dispute that plaintiffs failed to comply with the statutory requirements Oregon has placed upon dissenting shareholders. Moreover, plaintiffs' attempt to excuse this noncompliance with allegations that the Notice was misleading or illegal is without merit.

Specifically, plaintiffs' challenges that "the summary instructions do not distinguish between record shareholders and beneficial shareholders" and do not define "holders" are inaccurate. As noted above, the relevant statutes were attached to the summary as "Annex C," and the summary refers to the statutes repeatedly. Immediately below the caption "ANNEX C" and the title "OREGON DISSENTERS' RIGHTS STATUTE" are the definitions of "beneficial shareholder" and "record shareholder." Ex. 1, p.11. Contrary to plaintiffs' assertions, these definitions were provided in the proxy materials to every shareholder.

The summary itself specifies that beneficial shareholders are required to submit the written consent of their record shareholder. *Id.*, p.9. Of course, the exact statutory language is repeated and provided in Annex C at C-2 (Ex. 1, p.12). The additional requirement that dissenting shareholders who wish to "properly exercise dissenters' rights . . . must . . . timely deliver a demand for payment . . . and timely deposit the shareholders' certificates in accordance with the terms of the dissenters' notice" is also addressed prominently in the summary and provided again in the statute in Annex C. Ex. 1, p.8, 13-14.

Plaintiffs were advised fairly and thoroughly of these requirements in the summary and through provision of the statutes. Accordingly, this court is compelled to conclude that plaintiffs' assertions that the proxy statement was unfair or misleading are unsubstantiated and raise no genuine issue of material fact. Defendants are entitled to summary judgment on plaintiffs' Dissenters' Rights claim.

## 2. BREACHES OF FIDUCIARY DUTIES

Plaintiffs' second claim alleges two kinds of breach of fiduciary duties. First, plaintiffs assert that defendants breached duties in reference to the proxy statement; second, plaintiffs allege breaches of fiduciary duty arising out of related-party dealings. As a result of these alleged breaches plaintiffs seek the remedy of an award reflecting the fair market value of their shares at the time of the merger.

Defendants move for summary judgment on this claim, arguing first that there is no actionable breach claim regarding the proxy statement because plaintiffs' related dissenters' right action is the exclusive remedy in the absence of fraud or illegal conduct, *see* O.R.S. 60.554(2), and, as addressed above, plaintiffs failed to perfect their dissenters' rights. Defendants also contend that plaintiffs' "related-party dealing" breach claim fails, because (1) plaintiffs lack standing; (2) plaintiffs' claims are untimely; and (3) plaintiffs fail to rebut the presumptions of good faith dealing arising under the applicable "business judgment rule."

Plaintiffs' breach claim pertaining to the proxy statement fails because the statute provides that a dissenter cannot challenge the corporate action to which he dissents (here, the merger) unless the action was unlawful or fraudulent. No evidence of illegality or fraud is presented before this court. Even assuming this court could recognize a fiduciary duty regarding dissenters' rights outside of the scope of plaintiffs' unsuccessful dissenter's rights action, R-B complied fully with all relevant statutory requirements.

In addition to allegations that defendants provided a misleading proxy statement and misled shareholders on the fairness of the merger, plaintiffs also assert that after Dash acquired a seventy percent interest in R-B, Dash and R-B engaged in a "series of transactions" that serve as

grounds for plaintiffs' breach of fiduciary duty claim. These transactions include payment of management fees ranging from $6,000 per month from July 1999 to $25,000 per month starting in April 2000, and rising subsequently to $30,000 per month. Plaintiffs allege R-B paid Dash $1,056,000 in management fees after Dash acquired controlling interest until January 2003. Plaintiffs also allege that defendants breached fiduciary duties by paying Conway Air, a wholly-owned subsidiary of Dash, $223,051.14 for use of a charter jet.

### (1) **Plaintiffs lack standing**

Under Oregon law, individual shareholders lack a personal right of action against directors or officers of a corporation for wrongful acts that result in injury to the corporation. The parties acknowledge that the general rule is that a shareholder may not assert a direct claim against directors or officers who have defrauded or mismanaged a corporation if the only alleged injury is a diminution of stock value. *Smith v. Bramwell*, 31 P.2d 647 (Or. 1934). "If, however, a shareholder has a 'special' injury, then the shareholder has standing to assert a direct claim. A special injury is established where there is a wrong suffered by the shareholder not suffered by all shareholders generally or where the wrong involves a contractual right of the shareholders, such as the right to vote." *Loewen v. Galligan*, 882 P.2d 104, 111 (Or. App. 1994).

In *Loewen*, the plaintiffs were the majority shareholders and chief executive officer of a long distance telecommunications entity that merged with a competitor. The plaintiffs sued the chief executive officer of the other merger-entity, alleging breach of fiduciary duties, negligence, and other claims. In affirming dismissal of the plaintiffs' claims, the Oregon Court of Appeals concluded that the plaintiffs "adequately pleaded breach of fiduciary duty." *Id*. at 112. Nevertheless, plaintiffs lacked standing:

> After carefully reviewing plaintiffs' allegations and the reasonable inferences that can be drawn from them, however, we conclude that the only injury they allege is the loss in value of their investments in [the other merger-entity]. A wrongful act that diminishes the value of stock and thereby injures shareholders only indirectly, by reason of the prior injury to the corporation, is derivative. Because plaintiffs have not pleaded a special injury, we conclude that the claims they allege are derivative, and they do not have standing to bring direct claims for breach of fiduciary duty.

*Id*. (omitting internal quotation marks and citations).

Plaintiffs contend that their injury is "special" because "plaintiffs dissented from the merger and are entitled to an appraisal hearing on the fair market value of their specific shares." Pls.' Reply, p.10. However, plaintiffs also state plainly that "[t]he acts of self-dealing with Dash damaged the plaintiffs by causing a diminution in the value of R-B Rubber." Pls.' Mem. In Supp., p.20. This falls short of the requisite kind of special injury needed for a direct claim for breach of fiduciary duty. *Loewen*, 882 P.2d at 111.

Plaintiffs' assertion amounts to little more than that, contrary to Oregon case law, a derivative claim regarding the diminution of share value may be construed as "special" simply because an aggrieved shareholder dissents (or, as in this case, attempts but fails to dissent). Despite these characterizations, plaintiffs' alleged injury remains the disputed value of their shares. Accordingly, defendants are entitled to summary judgment on plaintiffs' breach of fiduciary duty claim. In light of this ruling it is unnecessary to proceed to defendants' other proffered grounds for summary judgment. However, the court elects to perfect the record by considering these arguments in the alternative.

\\\
\\\

### (2) **Plaintiffs' claims are untimely**

Defendants are also entitled to summary judgment on plaintiffs' breach of fiduciary duty claims because plaintiffs knew or should have known about the breach of fiduciary duty claims no later than July 2000. The two-year statute of limitations applicable to breach of fiduciary duty claims runs upon discovery of the facts that would make a reasonable person aware of the substantial possibility of the claim. *McLean v. Charles Ellis Realty, Inc.*, 76 P.2d 661, 665 (Or. App. 2003). The management fees and decisions to use the air service owned by Dash were disclosed in 2000 in public documents that were made available to shareholders.

Defendants filed "Form 10-KSB" on July 31, 2000, with the Securities Exchange Commission. *See* Ex. 13 to the Second Decl. of Frank J. Weiss. This document was filed publicly and available to shareholders. It referred to management fees and travel services R-B paid to Dash. *Id*. at p.4 of Ex. 13. A reasonable person who reviewed this document in 2000 would have known the facts necessary for asserting a breach of fiduciary duty claim. Plaintiffs first raised breach of fiduciary duty claims in their Amended Complaint, filed in June 2004. Consequently, plaintiffs' claims are time-barred.

### (3) **Presumptions arising under the "business judgment rule"**

Finally, defendants are also entitled to summary judgment on plaintiffs' breach of fiduciary duty claims because the related party transactions at issue were approved by the Board of Directors and subsequently evaluated and approved by a Special Committee of disinterested directors in accordance with Oregon law. Plaintiffs do not dispute these reviews and approvals, but contend that the disinterested directors merely rubber-stamped reports and opinions prepared by Dash and its directors. Plaintiffs assert that defendants failed to comply with O.R.S. 60.361,

which sets out requirements for corporations involved in "conflict of interest" transactions. That statute provides that the corporation may not void a conflict of interest transaction solely because of the conflict, as long as the transaction was disclosed to the board of directors and the board ratified the transaction; the transaction was known to the shareholders and they voted to ratify; or the transaction was fair to the corporation. O.R.S. 60.361.

Plaintiffs argue that the R-B Board of Directors did not meet to discuss the management fees being paid to Dash until 2000, one year after R-B began paying fees (totaling $36,000) to Dash. Plaintiffs also assert that the investigation was inadequate and that the disinterested directors "delegated their investigative duties back to the same directors they were investigating, and then gave approval to the opinions those directors submitted back to the committee." Pls.' Reply, p.13.

The Special Committee was formed in May 2002. The evidence shows that the committee spent 175 hours conducting an investigation, which generated a detailed report concluding that the fees and air services were fair and reasonable. The evidence suggests that the Committee acted in strict accordance with O.R.S. 60.631(3), (detailing requirements for ratification of conflict of interest transactions) and plaintiffs fail to present any evidence refuting this. Plaintiffs do not point to any noncompliance with these requirements, but instead challenge the committee's objectivity and thoroughness.

The Ninth Circuit recognizes the business judgment rule as a presumption that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. *Navellier v. Sletten*, 262 F.3d 923, 946 (9th Cir. 2001) (internal quotation marks and citation omitted); *see*

*also Fed. Deposit Ins. Corp. v. Castletter*, 184 F.3d 1040, 1044 (9th Cir. 1999) (business judgment rule protects corporate officials from liability for breaches of the duty of care so long as they act in good faith and without a corrupt motive).

The presumption attaches to the decisions of "directors who are fully independent and wholly disinterested." *Navellier*, 262 F.3d at 946. When applicable, the business judgment rule "insulates directors from liability, and imposes upon the party challenging the decision the burden of rebutting the presumption." *Id*. (citation omitted). "A hallmark of the business judgment rule is that a court will not substitute its judgment for that of the board if the latter's decision can be attributed to any rational business purpose." *Id*. (internal quotation marks and citation omitted).

The presumptive validity of an exercise of business judgment is rebutted in cases where the decision under attack is "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." *Ryan v. Aetna Life Ins. Co.*, 765 F. Supp. 133, 138 (S.D.N.Y. 1991). A plaintiff bears the burden of alleging well-pleaded facts to overcome the presumption and survive a motion to dismiss. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled in part on other grounds*, *Brehm v. Eisner*, 746 A.2d 244, 253 (Del. Supr. 2000).

After reviewing the record and evidence presented, this court concludes that the business judgment rule is applicable, and presumes that defendants' exercise of business judgment regarding the issues plaintiffs complain of was valid. Defendants created a Special Committee of disinterested directors in May 2002, and this Committee spent substantial time investigating whether the fees at issue were fair and reasonable. Defendants acted in accordance with Oregon

law. Plaintiffs' challenge of this business judgment falls far short of compelling a finding that defendants' actions demonstrated bad faith.

**CONCLUSION**

For the reasons provided above, plaintiffs' Motion for Partial Summary Judgment (Doc. # 59) is denied, and defendants' Motion for Summary Judgment (Doc. # 52) is granted. Defendants are entitled to summary judgment on plaintiffs' Dissenters' Right claim, as well as on plaintiffs' Breach of Fiduciary Duty claims. This action is dismissed. Any other pending motions are denied as moot. Judgment will issue separately.

IT IS SO ORDERED.

DATED this 3 day of June, 2005.

/s/Ancer L.Haggerty
Ancer L. Haggerty
United States District Judge